C. Ed CARRITHERS and Robert G. Coulter, Petitioners,

v.

TERRAMAR BEACH COMMUNITY IMPROVEMENT ASSOCIATION, INC., Respondent.

No. C–1066.

Supreme Court of Texas.

Jan. 5, 1983.

Rehearing Denied March 9, 1983.

Fred A. Lange, Houston, for petitioners.

Robert M. Moore, Galveston, for respondent.

RAY, Justice.

Terramar sought and obtained a permanent injunction prohibiting the defendants, Ed Carrithers and Robert Coulter, from constructing a marina partially on their land, but mostly in a submerged "turning basin" in which the plaintiff, Terramar Beach Subdivision, Inc., claims an easement. The trial court determined Terramar owned a perpetual, irrevocable and exclusive easement over all the submerged land in the turning basin and found the proposed marina would infringe on its easement rights. Carrithers and Coulter were permanently enjoined from constructing the marina. The court of appeals affirmed. Tex.App., 630 S.W.2d 648. At issue is the validity of the easement. Finding the easement to be invalid, we reverse the judgments of the courts below, dissolve the injunction and dismiss the cause of action.

The area in dispute is an 8.27172-acre turning basin on Galveston Island, which was submerged in 1963 by artificial means. The parties have stipulated that the turning basin is a navigable body of water, open to the Gulf of Mexico. At the time of submergence, the HGC Development Corporation owned legal title to all of the land which both plaintiffs and defendants now own. The turning basin and the canals leaving the basin were created by HGC from the tract of land. HGC then conveyed all of its rights to Timewealth Corporation, its trustee in bankruptcy. Subsequently, Timewealth Corporation conveyed the turning basin and canals to the 7500 Bellaire Corporation. In 1975, the Bellaire Corporation granted Cary White an easement of the full, free and uninterrupted use of all the turning basin and the waters overlying the basin. In turn, White assigned the easement to Terramar. Carrithers and Coulter acquired their property rights from the Bellaire Corporation subject to Terramar's easement. In 1978, the bed of the turning basin was conveyed by the Bellaire Corporation to the State of Texas by quitclaim deed. Carrithers and Coulter obtained a permit in 1980 from the United States Army Corps of Engineers to construct a marina located mainly in the turning basin. Terramar sought this injunction prohibiting construction on the basis of its exclusive easement to the land and the overlying navigable waters. The trial court's injunctive order permanently prohibits Carrithers and Coulter from essentially placing any

objects in or on the land area, and on or over the surface water of the "turning basin" where Terramar's easement exists, or otherwise obstructing, impairing, or interfering with Terramar's exclusive easement. The order expressly provides, however, that it should not be construed to limit or enjoin any person from using the waters of the turning basin for swimming, boating, fishing, or water transportation.

■ In Texas, the state owns the water, the beds and shores of the Gulf of Mexico. Tex.Nat.Res.Code Ann. art. 11.012(c). The waters of public navigable streams are held by the State in trust for the public, primarily for navigation purposes. *Motl v. Boyd,* 116 Tex. 82, 111, 286 S.W. 458 (1926). Texas has full sovereignty over the waters of the Gulf within its boundaries, subject to the United States government's right to exercise complete dominion over navigable waters under the "commerce clause" of the Constitution. U.S. Const. art. I, § 8, cl. 3; Tex.Nat.Res.Code Ann. art. 11.012(c).

■ An easement may not be created by express grant, or otherwise, if it is in contravention of a statute or is against public policy. *See Woolsey v. Panhandle Refining Co.,* 131 Tex. 449, 116 S.W.2d 675 (1938); *Neff v. Ulmer,* 404 S.W.2d 644, 646 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.); *Wilson v. Meredith, Clegg & Hunt,* 268 S.W.2d 511, 518 (Tex.Civ.App.—Beaumont 1954, writ ref'd n.r.e.). Further, an easement may not create a right or interest in a grantee's favor which the grantor himself did not possess. *See Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 202 (Tex. 1962). The exclusive right to control, impede or otherwise limit navigable waters in this State belongs to the governments of Texas and the United States. An individual landowner is without power to convey such a right. Thus, as grantor, the Bellaire Corporation could not give White (or Terramar as his assignee) the exclusive use of navigable waters which are owned by the State of Texas. We hold that a grant of the easement purporting to limit the use of navigable waters conflicts with the state and United States governments' sovereignty over such waters. U.S. Const. art. I, § 8; Tex.Nat.Res.Code Ann. art. 11.012(b).

The Bellaire Corporation purported to convey a perpetual exclusive easement and right of way not only for the full, free and uninterrupted use of the tract of land, but also for the waters overlying the land. Terramar contends the easement across the underlying beds would still be valid and enforceable even though the public might own the waters above the bed, relying on *Port Acres Sportsman Club v. Mann,* 541 S.W.2d 847 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). In *Mann,* a fee simple owner of the bed of a navigable stream was enjoined and prevented from maintaining a fence across the navigable stream and from preventing the defendants and other members of the general public the right of free passage. The court in *Mann* held that since the waters over the plaintiff's land were not navigable at the time the land was acquired, the subsequent event of the waters becoming navigable could not deprive plaintiffs of their title to the underlying land. Although the fee owner owned the bed, he could not control the use of the bed by maintaining a fence to prevent the public use of the overlying waters. *Mann, supra* at 849. The facts of the instant case are distinguishable in that Terramar does not own a fee simple interest in the bed, but instead it claims an easement therein.

Having found the easement invalid, the title the State took by the 1978 quitclaim deed to the turning basin bed is unencumbered by the purported easement. Consequently, construction of the marina is subject only to the State's consent as owner of the bed, and authorization from the United States government under 33 U.S.C. §§ 401, 403 (1976).

Accordingly, the judgments of the courts below are reversed and the permanent injunction issued by the trial court is hereby dissolved.

ROBERTSON and KILGARLIN, JJ., not sitting.