# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00475-CV

### West Beach Marina, Ltd., a Texas Limited Partnership, n/k/a West Beach Limited Partnership, Appellant

**v.**

### James M. Erdeljac; Darci Erdeljac; Dr. James R. Yates; Dr. Alba A. Ortiz; Thomas Rosenthal; and Susan Hemmingway Rosenthal, Appellees

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. 99-05212, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

This is an appeal from a final judgment enforcing a mediated settlement agreement and determining the scope of an easement over land under and abutting Lake Travis. Appellees James M. Erdeljac, Darci Erdeljac, Dr. James R. Yates, Dr. Alba A. Ortiz, Thomas Rosenthal, and Susan Hemmingway Rosenthal[1] filed suit against appellant West Beach Marina, Ltd., now known as West Beach Limited Partnership (AWest Beach@), seeking a declaration regarding the scope of an express easement across West Beach=s adjacent property, upon which West Beach planned to build a marina. After a lengthy mediation, the parties= attorneys signed an agreement.

---

[1] Because appellees= interests are the same, we will refer to them collectively as Athe Erdeljacs.@

When West Beach repudiated the agreement, the Erdeljacs amended their pleadings to allege West Beach=s breach. At trial, a jury determined that (1) the parties intended to be bound by the agreement and (2) West Beach had failed to comply with the agreement. The district court then held a bench trial to determine the extent of the Erdeljacs= easement and attorney=s fees. The district court enforced the parties= mediated agreement and defined the easement, finding that the easement did not permit the Erdeljacs to park and engage in recreation on West Beach=s land above the Lake Travis waterline, and awarded the Erdeljacs attorney=s fees, interest, and costs. West Beach appeals the district-court judgment by ten issues, claiming that: the agreement and easement were unenforceable as a matter of law; the evidence was legally and factually insufficient to support the jury=s verdict; and the awards of attorney=s fees, interest, and costs were erroneous. We will affirm the district-court judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

West Beach owns property that is partially on the shore of and partially inundated by Lake Travis. The property adjoins the Erdeljacs= property. West Beach applied for and was granted a permit by the Lower Colorado River Authority (ALCRA@) to build a marina on the water covering its property. The Erdeljacs protested the application on the basis that it would interfere with their express easement across the West Beach property, which, they asserted, granted them ingress and egress to the lake and permission to install waterlines and docks. After the LCRA denied the protest, the Erdeljacs filed suit in district court seeking a declaration that the proposed marina would unreasonably interfere with their easement.

2

The parties entered a long and embattled pretrial process, which included several settlement conferences and two mediations. The mediation relevant to this appeal occurred on June 29, 2000. The parties negotiated from about 9:30 a.m. until sometime in the early evening. The West Beach party representatives left the mediation just before 7:00 p.m., although at least one of them was available by telephone and fax machine. The parties= attorneys remained and drafted a written agreement (the AAgreement@), which the mediator and attorneys signed. West Beach later repudiated the Agreement. The Erdeljacs then amended their petition, seeking a declaration that the Agreement was an enforceable contract or Rule 11 agreement, *see* Tex. R. Civ. P. 11, which West Beach had breached. The Erdeljacs sought specific performance of the Agreement and damages resulting from West Beach=s breach. West Beach counterclaimed, seeking a declaration that the Erdeljacs= easement did not permit parking or recreation on West Beach=s dry land. Both parties sought attorney=s fees.

The district court, on West Beach=s motion, ordered separate trials, dividing the issues surrounding the Agreement from the others. A jury found that West Beach intended to be bound by the Agreement and had breached it. The parties tried the remaining issues to the bench. The district court=s final judgment enforced the easement and the Agreement, but found that the easement did not permit the Erdeljacs to linger or park on West Beach=s property, and awarded prejudgment interest, attorney=s fees, and court costs to the Erdeljacs.

West Beach appeals, asserting that: (1) the Agreement is not enforceable as a matter of law; (2) there was no or insufficient evidence to support the jury finding of a binding agreement; (3) the district court could not enforce an easement over navigable waters; (4) the easement and

**3**

Agreement violate the Statute of Frauds[2] and the Statute of Conveyances;[3] and (5) the Erdeljacs are not entitled to prejudgment interest, attorney=s fees, and costs.

## DISCUSSION

### I. Enforceability of the Agreement

By its first three issues, West Beach argues that the Agreement was not enforceable as a matter of law. West Beach argues that the district court erred in declaring that the Agreement was an enforceable Rule 11 agreement. Alternatively, West Beach argues that Rule 11 is not applicable because it is superseded by section 154.017 of the alternative-dispute-resolution-procedures act. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 154.071(a) (West 1997). We review questions of law *de novo*. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994); *Republic Western Ins. Co. v. State*, 985 S.W.2d 698, 701 (Tex. App.CAustin 1999, pet. dism=d w.o.j.).

### A. Rule 11

Rule 11 provides in its entirety:

---

[2] Statute of Frauds, Tex. Bus. & Com. Code Ann. ' 26.01 (West 1987) (providing that contract for sale of real estate is not enforceable unless it is in writing and signed).

[3] Statute of Conveyances, Tex. Prop. Code Ann. ' 5.021 (West 1984) (providing that conveyance of real estate must be in writing and must be subscribed to and delivered by conveyor).

> Unless otherwise provided in these rules, no agreement between attorneys or parties *touching any suit pending* will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex. R. Civ. P. 11 (emphasis added). The rule provides threshold requirements that apply to all settlement agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984) (ARule 11 is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments.@)); *Roeglin v. Daves*, 83 S.W.3d 326, 330 (Tex. App.CAustin 2002, pet. denied). Thus, Acompliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit.@ *Kennedy*, 682 S.W.2d at 529. It is undisputed that the Agreement here was written and signed by counsel. *See Ebner v. First State Bank*, 27 S.W.3d 287, 297 (Tex. App.CAustin 2000, pet. denied) (indicating Rule 11 agreement may be signed by party or party=s attorney). It was filed with the court as an attachment to an amended pleading, satisfying Rule 11=s filing requirement. *See Padilla*, 907 S.W.2d at 461 (holding that Rule 11 filing requirement is satisfied so long as agreement is filed before party seeks to enforce it); *Southwestern Bell Tel. Co. v. Perez*, 904 S.W.2d 817, 822 (Tex. App.CSan Antonio 1995, no writ) (holding that attaching agreement to pleadings meets Rule 11=s filing requirement). The Agreement thus satisfies all elements of Rule 11.

West Beach argues, however, that the Agreement could not be an enforceable Rule 11 agreement because AWest Beach withdrew consent to the agreement prior to entry of judgment.@ West Beach confuses the requirements of an agreed judgment with a Rule 11 agreement. *See Padilla*, 907

**5**

S.W.2d at 461 (AAlthough a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement.@); *CherCo Prop., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 265 (Tex. App.CFort Worth 1999, no pet.). West Beach=s argument is thus without merit.

## B. Alternative Dispute Resolution Procedures Act

West Beach next argues that the alternative-dispute-resolution-procedures act, not Rule 11, controls the Agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 154.001-.073 (West 1997 & Supp. 2003). West Beach asserts that the act requires the *party=s* signature as the exclusive means for creating an enforceable mediation agreement, whereas Rule 11 permits the *attorney=s* signature to create an enforceable agreement. *Compare id.* ' 154.071(a) (AIf the *parties . . . execute* a written agreement . . . .@) (emphasis added), *with* Tex. R. Civ. P. 11 (agreement to be Ain writing, *signed*, and filed) (emphasis added); *see also Ebner*, 27 S.W.3d at 297. West Beach urges that, because the Agreement was signed by its attorney, but not by a West Beach general partner, the Agreement is not enforceable under the act.

Rule 11, although applicable to all settlement agreements, is not exclusive, and other law may provide additional requirements before an agreement is enforceable. *See Kennedy*, 682 S.W.2d at 529; *CherCo Prop.*, 985 S.W.2d at 265-66. The act provides: AIf the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner *as any other written contract*.@ Tex. Civ. Prac. & Rem. Code Ann. ' 154.071(a) (West 1997) (emphasis

**6**

added); *In re Marriage of Ames*, 860 S.W.2d 590, 592 (Tex. App.CAmarillo 1993, no writ) (AIn order to effect the purposes of mediation and other alternative dispute resolution mechanisms, settlement agreements must be treated with the same dignity and respect accorded other contracts reached after arms length negotiations.@). Courts employ the same procedures used to enforce other contracts when examining mediated settlement agreements. *See, e.g.*, *Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.CHouston [14th Dist.] 1995, writ denied); *Clopton v. Mountain Peak Water Supply Corp.*, 911 S.W.2d 525, 527 (Tex. App.CWaco 1995, no writ).

It is well settled that a party may clothe his attorney with actual or apparent authority to reach and sign a settlement agreement that binds the client. *See Williams v. Nolan*, 58 Tex. 708, 713-14 (1883); *Ebner*, 27 S.W.3d at 300; *Walden v. Sanger*, 250 S.W.2d 312, 316 (Tex. Civ. App.CAustin 1952, no writ). We have found no indication that the legislature, in codifying alternative-dispute-resolution procedures, intended to limit the common-law rule. *Cf. Cadle Co. v. Castle*, 913 S.W.2d 627, 632 n.2 (Tex. App.CDallas 1995, writ denied) (noting that court could find no legislative discussion shedding light on purpose of section 154.071(b)). The policy behind the act is not to hinder settlement by restricting previous practice, but Ato encourage the peaceable resolution of disputes.@ Tex. Civ. Prac. & Rem. Code Ann. ' 154.002. Under the facts presented here, we decline to hold that parties may not authorize their attorneys to sign mediated settlement agreements on their behalf.

However, we recognize that a fact issue may arise as to whether an attorney has authority to bind the client to a mediation agreement. *See Martin*, 909 S.W.2d at 196-97 (holding that fact disputes over existence of mediated settlement agreement should be settled by fact finder). West Beach contends

**7**

that the Agreement is unenforceable as a matter of law because the attorneys= signatures do no more than indicate approval as to form, and that the Agreement required the signatures of the parties in order to be enforceable. The signature page is the first page of the Agreement and is a typed or printed form prepared by the mediator. It contains space for the parties= signatures, below which is a separate area for the attorneys= signatures. Directly above the area for the attorneys= signatures is the statement AAPPROVED BY COUNSEL.@ We agree that this is some evidence in support of West Beach=s position. It is not, however, conclusive. Whether the attorneys= signatures were intended merely to indicate approval as to the Agreement=s Aform@ or to bind the parties to the substance of the Agreement was a question for the jury=s resolution. We decline to hold, as a matter of law, that the location of the attorneys= signatures determined the parties= intention.

### C. Conclusive Lack of Intent to be Bound

West Beach further argues that the Agreement is unenforceable as a matter of law because the Agreement is indefinite. Its argument is twofold: first, the Agreement contemplates future negotiation, which indicates on its face that the parties had no intent to be bound by the Agreement; second, the Agreement failed to address important issues in dispute, rendering the Agreement unenforceable as a matter of law. We address these arguments in turn.

The Agreement provides:

1. [West Beach] to not build 32 southern most docks on proposed Dock A, leaving only 10 docks on south side . . . .

**8**

2. Parties agree to restrict usage of the ABasin Area@ as defined in settlement offer dated May 19, 2000 from the [Erdeljacs].[4]

3. [West Beach] will pay to the [Erdeljacs] the sum of $275,000.

4. Funding to occur within 14 days from June 29, 2000.

5. Appropriate documentation to be entered into recognizing the validity and scope of [the Erdeljacs=] easement.

6. Terms to be secured by Agreed Judgment.

7. The [Erdeljacs] agree to coordinate the movement of their docks with the movement of the marina docks. The parties agree to establish a method of coordination whereby if the [Erdeljacs] fail to move their docks as needed to address a changing lake level, West Beach may, but is not obligated to move the [Erdeljacs=] docks for them; without any liability associated with such move.

---

[4] The May 19 settlement offer provides:

The amended sketch of the >Basin Area= is attached. The following restrictions shall apply and run with the land or for so long as the [Erdeljacs=] property is used for residential purposes and [West Beach]=s property is used for commercial purposes: (1) No commercial boat launching in the Basin Area . . . . (2) No docks . . . will be placed, floated over, or used in the Basin Area. (3) No float-ball mooring will be placed or used in the Basin Area. (4) No commercial boat cleaning facilities shall be located in the Basin Area. (5) No boat or personal watercraft rentals shall be conducted in the Basin Area.

8.  The parties recognize that this agreement reflects a summary of the settlement reached, and that there will be additional matters to be resolved in order to effect this settlement, which shall be ultimately reduced to a formal settlement agreement.

9.  The [Erdeljacs=] docks, when located on the Easement, shall at all times be located to maintain a distance of at least 50 feet from the nearest West Beach marina dock. The [Erdeljacs=] docks shall in no event extend more than 120 feet from the nearest shoreline. The Part[ies] agree that when they can maintain their docks over their own property they will do so. The parties agree to negotiate further to determine at what lake level the [Erdeljacs] will move their docks onto their property.

(Footnote added.) West Beach emphasizes paragraphs 5, 7, 8, and 9 as contemplating future negotiation and establishing, as a matter of law, that the parties did not intend the Agreement to be binding.

As we have previously noted, the enforcement of a mediated agreement is governed by principles of contract law. Tex. Civ. Prac. & Rem. Code Ann. ' 154.071(a); *Martin*, 909 S.W.2d at 195. To have an enforceable agreement, the parties must agree on all material terms, *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221(Tex. 1992), although the parties may agree on certain contract terms and leave others for later negotiation. *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972). It is generally a fact question for the jury to determine whether the parties intended to be bound by the written agreement or intended the agreement to be preliminary and without legal significance. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988). However, the court may determine as a matter of law that the language in the agreement conclusively establishes the intent of the parties. *Id.*

In *Foreca*, the parties exchanged letters that formed an agreement. 758 S.W.2d at 744-45. The letters indicated that the agreement was Asubject to legal documentation,@ but the parties never executed the legal documentation. *Id.* at 745. Foreca argued that the writings constituted an agreement that

**10**

GRD had breached. *Id.* GRD responded that there was no enforceable agreement because the language created a condition precedent, which was not fulfilled. *Id.* The court held that the Asubject to legal documentation@ language did not establish as a matter of law that the parties did not intend to contract but created a fact question with respect to the intent of the parties. *Id*. at 746. On the other hand, in *John Wood Group U.S.A., Inc. v. ICO, Inc.*, the court determined that a letter agreement, which stated the agreement Ais not binding@ except for certain provisions, conclusively established that the parties did not intend to be bound by the agreement. 26 S.W.3d 12, 15 (Tex. App.CHouston [1st Dist.] 2000, pet. denied).

Paragraph 5 of the Agreement states that the parties will enter A[a]ppropriate documentation . . . *recognizing* the validity and scope of [the Erdeljacs=] easement.@ (Emphasis added.) West Beach argues that the scope and validity of the easement was a hotly contested issue, and the fact that the parties left this important issue for later determination clearly indicates they had no intent to be bound. We disagree. We note that the Agreement contemplates *recognizing* the validity and scope of the easement, as opposed to *determining* the validity and scope of the easement. The paragraph may indicate that the parties had already reached agreement that the easement was valid and that only formal documentation was necessary. The language is similar to the language in *Foreca*, where the agreement was Asubject to legal documentation.@ 758 S.W.2d at 746. The paragraph does not conclusively establish that the parties had no intent to be immediately bound by the Agreement.

Paragraph 8 indicates that the Agreement is a summary of the Asettlement reached@ and that Aadditional matters@ must be resolved Ain order to effect this settlement.@ West Beach argues that this

**11**

language is similar to *John Wood Group*, where the court determined the language that an agreement Ais not binding@ except for certain provisions conclusively establishing the parties= intent not to be bound. 26 S.W.3d at 15. The language, however, is more closely analogous to that in *Foreca*. *See Foreca*, 758 S.W.2d at 746. It lacks an expression of clear intent *not* to be bound, as found in *John Wood Group*. 26 S.W.3d at 15. The paragraph leaves open the question of the parties= intent.

Paragraph 7 recognizes that the parties will establish a method for coordinating movement of the docks, and paragraph 9 recognizes the parties will later determine the lake level at which to move their docks. Although both paragraphs point to open terms in the Agreement, the paragraphs in their entirety provide sufficient detail to determine the obligations of the parties. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221.

These provisions do not establish, as a matter of law, a lack of an intent to be bound. That West Beach and the Erdeljacs contemplated a more formal document, and that the parties contemplated future negotiations is evidence the jury could consider in determining whether the parties intended to be bound by the Agreement. *See Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 629 (Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.). The provisions fall short of conclusively establishing that the parties did not intend to be bound by the Agreement.

West Beach further argues that the Agreement is unenforceable because it does not resolve all the issues in dispute. Specifically, the Agreement does not address the question of whether the easement permitted the Erdeljacs to park or engage in recreational activities on West Beach=s property. These issues

were tried to the bench.[5]  West Beach argues that these issues were among Athe biggest issues in the lawsuit@ and failure to resolve them in the Agreement attests to the fact that the Agreement was not a full settlement of the lawsuit.

Although the Agreement clearly does not address these issues, we do not agree with West Beach that these unresolved issues render the Agreement unenforceable as a matter of law.  The question of whether the Erdeljacs could engage in recreation on the land above the Lake Travis waterline was not raised until after the June 29 mediation.[6]  But this unresolved issue does not render the agreement conclusively unenforceable.  Whether the Erdeljacs could park vehicles on the West Beach property was at issue at the time of the Agreement.[7]  We assume this to be an important issue in the suit.  To be enforceable, a contract must define all *essential terms* so that a court may determine the obligations of the parties.  *T.O. Stanley Boot Co.*, 847 S.W.2d at 221.  However, we find no support for West Beach=s argument that failure to settle all *disputed issues* renders a mediation agreement unenforceable.  West Beach recognizes, and we agree, that Aparties may agree on certain severable issues while still not resolving the entire dispute.@

---

[5] West Beach does not argue that the district court erred in trying these issues separately.  In fact West Beach moved for a separate trial on the basis that it would be prejudicial to West Beach to introduce the Agreement while also trying the scope-of-easement issue.  *See* Tex. R. Civ. P. 40(b) (trial court may order separate trials Ato prevent . . . prejudice@).

[6] West Beach amended its pleadings to seek a declaration that the Erdeljacs could not recreate on the West Beach property in its ASeventh Amended Answer and Fifth Amended Counterclaim,@ filed on September 12, 2000, approximately two and one-half months after the mediation.

[7] West Beach sought a declaration that the Erdeljacs could not park vehicles on the easement in its ASixth Amended Answer and Fourth Amended Counterclaim,@ filed two days before the mediation.

13

*See Applewhite v. Sessions*, 131 S.W.2d 301, 304 (Tex. Civ. App.CEl Paso 1939, writ dism=d) (AThere may be a binding settlement by a compromise without a complete closing of all pending matters.@); 15A C.J.S. *Compromise & Settlement* ' 3(a) (West 1967) (AParties may settle any part of a controversy and leave the rest for litigation.@).

An agreement must contain sufficient terms to determine the parties= obligations but is not required to resolve all disputed issues. In determining the parties= intent to be bound by the Agreement, the jury may consider any evidence of important issues left unresolved at the mediation. *See Buck*, 678 S.W.2d at 629. We decline to hold that the Agreement is unenforceable as a matter of law and overrule West Beach=s first three issues.

## II. Sufficiency of Evidence

By its fourth issue, West Beach asserts that the evidence is legally and factually insufficient to support the jury=s finding Aof actual or apparent authority, or ratification, so as to bind West Beach to [the Agreement].@ West Beach=s complaint takes issue with the jury=s affirmative answer to Question No. 1: ADid the [Erdeljacs] and [West Beach] intend to bind themselves to the [Agreement] whereby the [Erdeljacs] and [West Beach] agreed to settle this lawsuit?@ In submitting the question, the district court thoroughly instructed the jury as to what it might consider in reaching its answer:

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties= unexpressed thoughts or intentions.

During negotiations, the parties may agree to some terms of an agreement with the expectation that other terms are to be agreed upon later or that the parties contemplate a

**14**

future additional written document. Such an expectation does not prevent the agreement already made from being an enforceable agreement.

A party=s conduct includes the conduct of another who acts with the party=s authority or apparent authority.

Authority for another to act for a party must arise from the party=s agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent exercise of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

A party=s conduct includes conduct of others that the party has ratified. Ratification may be express or implied.

Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquires full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

On appeal West Beach lodges no complaint to the court=s charge.

In reviewing a complaint that the evidence is legally insufficient to support a jury finding, we consider all of the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in that party=s favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). If there is any evidence of probative force, *i.e.*, more than a mere scintilla, to support the finding, we will overrule the point. *In re King=s Estate*, 244 S.W.2d 660, 661 (Tex. 1951);

**15**

*Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex. App.CHouston [1st Dist.] 1993, writ denied). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if the evidence is so weak as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Apparent authority may arise when the principal shows such a lack of ordinary care as to clothe the agent with *indicia* of authority. *See NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996) (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)). The focus is on the actions of the principal, the party charged with responsibility for the action. *See Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 428 (Tex. 1977). To support the verdict, there must be some evidence in the record that West Beach=s conduct led the Erdeljacs to believe that its attorney had authority to bind West Beach to the Agreement

Bob Leonard and Mitch Leonard were the West Beach party representatives at the mediation. The record indicates that all parties wanted to reach an agreement and end the litigation. Bob Leonard testified that he told the Erdeljacs on the day of the mediation that AMitch and I have full authority to settle this, and guys, today is your best shot.@ There is evidence that Bob Leonard was satisfied with the Agreement and that it was several weeks before the Erdeljacs learned West Beach did not intend to be bound by the Agreement. The record reflects that the Leonards were present at the start of the mediation, when the mediator made everyone aware of the Amediation rules,@ including that there must be

**16**

representatives with settlement authority. Bob Leonard informed the mediator that he would have to leave the mediation at around 6:30 p.m., and he and Mitch Leonard did in fact leave the mediation at around 6:50.

> [Q.]: And did I hear you correctly when you said that when you left, the only thing left was the matter of money? Did I recall that testimony correctly?
>
> Bob Leonard: Yes, I believe that the plaintiffs were still trying to decide whether they were going to accept the money or not.

At this time, West Beach=s outstanding offer to the Erdeljacs was $275,000. After the Leonards left the mediation, the only remaining West Beach representative was its attorney. Bob Leonard testified that he was available by telephone and fax machine. He conversed by telephone several times with the attorney, who informed him that the Erdeljacs had accepted West Beach=s monetary offer. While the attorneys were drafting the written agreement, Leonard talked to the West Beach attorney about the specific wording and content of the Agreement, the last conversation occurring at about 8:45 p.m.

The jury judges the credibility of the witnesses and the weight to be given their testimony. *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 862 (Tex. App.CAustin 2001, pet. denied). It is free to believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). It may accept any or all of the testimony presented to it. *Codner v. Arellano*, 40 S.W.3d 666, 671 (Tex. App.CAustin 2001, no pet.). Conversely, the jury may reject any testimony it wishes. *Trinity Indus.*, 53 S.W.3d at 862. It may infer intention from other facts and circumstances before it. *Scott*, 489 S.W.2d at

556-57 (citing *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415 (Tex. 1955)). It is the jury=s province Aalso to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses.@ *Ford*, 252 S.W.2d at 563.

From the evidence presented to it, the jury could reasonably believe that West Beach bestowed on its attorney such *indicia* of authority that would lead a reasonably prudent person to rely on her authority to bind West Beach to the Agreement. There is evidence that the mediator ensured the parties knew there was to be a person with settlement authority at the mediation at all times. The jury could reasonably infer that Bob Leonard was aware of this requirement, and that when the Leonards left the mediation, they had impliedly authorized their attorney to complete the settlement. Although there is also evidence that Bob Leonard intended to retain final settlement authority by being available by phone and fax, it was for the jury to weigh any conflicting evidence. All attorneys present at the end of the mediation signed the Agreement. We cannot say that the jury=s finding is supported by evidence so weak as to make the verdict clearly wrong and unjust. There is both legally and factually sufficient evidence to support the jury verdict. We may not substitute our judgment when a jury verdict is grounded in sufficient evidence, *Trinity Indus.*, 53 S.W.3d at 862-63 (citing *Cain*, 709 S.W.2d at 176), and will not do so merely because we might reach a different result, *id.* at 863 (citing *Westech Eng=g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.CAustin 1992, no writ)). We overrule West Beach=s fourth issue.

## III.   Validity of Easement

**18**

By issues five, six, and seven, West Beach argues that the Erdeljacs= easement is not enforceable. It argues that the easement violates the supreme court=s holding in *Carrithers v. Terramar Beach Community Improvement Ass=n*, 645 S.W.2d 772 (Tex. 1983), the Statute of Frauds, and Statute of Conveyances.

In 1945 George Clary purchased approximately 88 acres of land on Lake Travis. In 1958 Clary and his wife, Daisy, conveyed approximately 5.873 acres in the southeastern corner of the property, known as ATract 3,@ to Ray and Lillian Grunt. Included in the 1958 conveyance was an easement:

> EASEMENT: There is included in this conveyance the right and privilege of passage over and across the property between the west boundary of Tract 3 herein above described and *the water=s edge of Lake Travis lying between parallel lines extending north 61° 05' west from the most northerly west corner and from the most southerly west corner of the said Tract 3*; this easement is to include the right and privilege to install water lines, boat docks, etc. of the type customarily used in connection with lake property in the area.

(Emphasis added.) The area of dry land described in the emphasized portion of the easement=s description expands and shrinks from time to time as the shoreline of Lake Travis moves with changes in its surface level. ATract 3@ and the associated easement are now held by the Erdeljacs.[8] The remainder of the Clary property is now owned by West Beach. When West Beach planned to build a commercial marina, the Erdeljacs sought enforcement of the easement. By partial summary judgment, the district court determined that the easement allowed the Erdeljacs a nonexclusive right to build three floating residential docks abutting

---

[8] Tract 3 has been subdivided so the appellees each own separate portions, which together comprise the former ATract 3.@

the easement property and extending beyond the water=s edge. The district court determined that, because both parties had presented evidence, the issue of whether West Beach=s planned marina would interfere with the Erdeljacs= reasonable enjoyment of the easement remained open. The Agreement established obligations and limits on both parties= use of the easement. Following a bench trialCthe final trial in this causeCthe district court rendered a final judgment providing, *inter alia*, that:

> [the] easement is valid; that the easement goes beyond the water=s edge for the purpose of installing, using and maintaining three residential boat docks, together with those rights reasonably necessary to the fair enjoyment of the easement. The easement does not include the right to park vehicles on [West Beach=s] property; the easement does not include the right to linger on the dry land portion of [West Beach=s] property for recreational purposes including, but not limited to, picnicking, fishing, loitering, discharging firearms or shooting fireworks.

**A.** ***Carrithers v. Terramar Beach Community Improvement Association***

By issue five, West Beach argues that the easement, as interpreted by the district court, is invalid because it is an easement over navigable waters. West Beach relies on *Carrithers* as establishing that easements over navigable waters in Texas are void as a matter of law. West Beach reads *Carrithers* too broadly. In *Carrithers*, Terramar owned Aan easement of the full, free and uninterrupted use@ of a Aturning basin@ on Galveston Island and Athe waters overlying the basin,@ which were stipulated to be navigable waters. *Carrithers*, 645 S.W.2d at 773. Carrithers and Coulter owned land adjacent to the turning basin, but not the submerged bed, which was owned by the State. *Id.* Terramar sought and obtained a permanent injunction preventing Carrithers and Coulter from constructing a marina over the turning basin. *Id.* The trial court determined that Terramar owned a Aperpetual, irrevocable and exclusive easement@ over the submerged land in the basin and issued a permanent injunction against the construction. *Id.* The court of appeals affirmed. *Id.* The supreme court held the easement invalid and dissolved the injunction. *Id.* Because the State owns and has full sovereignty over navigable waters within its boundaries,[9] subject to the United States government=s right to exercise complete dominion under the Commerce Clause, A[t]he exclusive right to control, impede or otherwise limit navigable waters in the State belongs to the governments of Texas and the United States.@ *Id.* at 774. Thus, Terramar could not maintain an easement for Athe *exclusive* use of navigable waters which are owned by the State of Texas.@ *Id.* (emphasis added).

---

[9] *See* Tex. Water Code Ann. ' 11.021(a) (West 2000) (AThe water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state is the property of the state.@).

Although we agree with West Beach that Lake Travis is part of the navigable waters of the State, we disagree that *Carrithers* stands for the proposition that easements over navigable waters in Texas are void as a matter of law. The easement struck down by the supreme court was one that purported to grant *exclusive use* of a portion of the State=s navigable waters to an individual landowner, a grant that no other individual landowner was empowered to make. *Id.* The *Carrithers* court made it clear that construction on navigable waters is allowed if consent is obtained from the appropriate governmental bodies. *Id.* Although the parties= briefs discuss the power of the Lower Colorado River Authority to regulate and control the waters of the Colorado River, and thus Lake Travis, the issue of the appropriate authorizations, if any, needed by the Erdeljacs to construct floating docks and West Beach to construct a marina is not before us and we express no opinion in that regard, other than to observe that the easement at issue here does not and cannot grant the Erdeljacs the exclusive use of any of the waters of Lake Travis. We overrule issue five.

**B. Statute of Frauds and Statute of Conveyances**

By issues six and seven, West Beach argues that the easement and certain restrictions found in the Agreement are unenforceable because they violate the Statute of Frauds and Statute of Conveyances. Specifically, West Beach alleges that the property descriptions found in the documents are insufficient.

The Statute of Frauds requires that a contract for the sale of real estate be in writing and signed by the person to be charged. Tex. Bus. & Com. Code Ann. ' 26.01 (West 1987). The Statute of Conveyances likewise dictates that a conveyance of real estate be in writing and subscribed to and

delivered by the conveyor. Tex. Prop. Code Ann. ' 5.021 (West 1984).[10] An express easement is an interest in land to which the Statute of Frauds applies. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). If an easement does not sufficiently describe the interest conveyed, the conveyance is void. *Id.* ATo be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or date by which the land to be conveyed may be identified with reasonable certainty.@ *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972) (citations omitted). Whether an agreement falls within the Statute of Frauds is a question of law. *Frost Nat=l Bank v. Burge*, 29 S.W.3d 580, 594 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (citing *Gerstacker v. Blum Consulting Eng=rs, Inc.*, 884 S.W.2d 845, 849 (Tex. App.CDallas 1994, writ denied)).

### 1. The Easement

West Beach alleges that the underwater portions of the easement are not adequately described. Indeed, the easement appears contradictory. It provides for the Aright of privilege and passage over and across [West Beach=s] property@ to Athe water=s edge,@ but also includes the right to Ainstall water lines, boat docks, etc. of the type customarily used in connection with lake property in the area,@ which would necessarily extend beyond the water=s edge. The fact that an easement is uncertain does not authorize the court to completely ignore the right granted, if the easement is susceptible to a reasonable

---

[10] The test for sufficiency of a writing is essentially the same in both the Statute of Frauds and the Statute of Conveyances. *See, e.g.*, *Broaddus v. Grant*, 258 S.W.2d 308, 309 (Tex. 1953). Thus, for simplicity, we refer generally to the Statute of Frauds.

construction as to its true intent and meaning. *Adams v. Norsworthy Ranch*, 975 S.W.2d 424, 428 (Tex. App.C Austin 1998, no pet.) (citing *Elliot v. Elliot*, 597 S.W.2d 795, 802 (Tex. App.C Corpus Christi 1980, no writ)). Here, the easement clearly grants two distinct rights to the dominant estate: first, the dominant estate enjoys Aprivilege of passage@ on the portion of the land described, which extends to the water=s edge; second, the dominant estate enjoys the right to install water lines and boat docks, which necessarily extend beyond the water=s edge.

The Statute of Frauds is clearly satisfied with respect to the privilege of passage in the properly described area because it provides the exact boundaries of the area. Although the description of the area wherein the Erdeljacs could place boat docks and water lines is less exact, we determine that the Statute of Frauds is also satisfied as to the second right. The Statute of Frauds requires that the easement provide enough detail that the court may determine the intent of the parties, the essential terms of the easement, and an adequate description of the location of the easement, without resort to extrinsic evidence. *See Pick*, 659 S.W.2d at 637; *Vrabel v. Donahoe Creek Watershed Auth.*, 545 S.W.2d 53, 54 (Tex. Civ. App.C Austin 1976, no writ). The easement extends along the edge of the water, outwards for the width of the boat docks and water lines, between the parallel lines described in the easement. The easement does not describe its exact width, but it provides the Aframework or skeleton,@ so the court may resort to parol evidence to fill in this detail. *See Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945) (A[R]esort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in

**24**

the memorandum.@). Here, the purpose of the easement is stated in general terms, Ato install water lines, boat docks, etc. of the type customarily used in connection with lake property in the area.@ In construing a pipeline easement that did not Aprescribe metes and bounds for the easement, nor [did] it define a course or direction for the pipe to follow across the land,@ the supreme court held that the construction of the pipeline Awith the consent and acquiescence@ of the landowner Afixed and [made] certain@ the pipeline company=s easement rights. *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 663, 666 (Tex. 1964) (citing *Bland Lake Fishing & Hunting Club v. Fisher*, 311 S.W.2d 710, 716 (Tex. Civ. App.CBeaumont 1958, no writ) (AThe general rule is that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenant, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been employed.@)); *see also Elliot*, 597 S.W.2d at 802. Paragraph 9 of the Agreement specifically addresses the extent of the easement: the Erdeljacs= docks Ashall at all times be located to maintain a distance of at least 50 feet from the nearest West Beach marina dock . . . and shall in no event extend more than 120 feet from the shoreline.@ By entering into the Agreement, the parties fixed and made certain the extent of the Erdeljacs= easement. We hold that the easement satisfies the Statutes of Frauds and Conveyances and overrule issue six.

### 2. The Basin Area

West Beach also argues that the description of the ABasin Area@ in the Agreement Afail[s] to satisfy the Statute of Frauds.@ Paragraph 2 of the Agreement provides: AParties agree to restrict usage of

the >Basin Area= as defined in settlement offer dated May 19, 2000 from the Plaintiffs.@ The May 19

settlement offer includes a hand-drawn sketch superimposed on an elevation map that indicates the location

of the Basin Area,[11] as well as a narrative description of permissible uses within the area. The settlement

offer also states that the Arestrictions shall apply and run with the land or for so long as the [Erdeljacs=]

property is used for residential purposes and [West Beach=s] property is used for commercial purposes.@

To satisfy the Statute of Frauds, the Basin Area must be identifiable with reasonable certainty. *See*

*Morrow*, 477 S.W.2d at 539. The description need not be Amathematically certain, but only reasonably

certain so as to enable a party familiar with the locality to identify the premises to be conveyed to the

exclusion of others.@ *Templeton v. Dreiss*, 961 S.W.2d 645, 659 (Tex. App.CSan Antonio 1998, pet.

denied). There should be sufficient certainty that a surveyor may locate the easement from the description.

*Wallace v. McKinzie*, 869 S.W.2d 592, 597 (Tex. App.CAmarillo 1993, writ denied); *Vrabel*, 545

S.W.2d at 54.

Both West Beach and the Erdeljacs presented affidavit testimony of surveyors. Although

West Beach=s surveyor concluded that he could not employ the map to locate the Basin Area, the

Erdeljacs= surveyor concluded that the Basin Area hand-sketched map was sufficient to determine the area

and created a metes-and-bounds description from the map and related documents. The district court, as

fact finder, apparently accepted, as he was entitled to do, the Erdeljacs= evidence and rejected that of West

---

[11] The sketch refers to an AAmended Basin Area.@ The record reflects that, at least for the purposes of this appeal, the ABasin Area@ and AAmended Basin Area@ are one and the same.

Beach. *See McGalliard*, 722 S.W.2d at 697; *Trinity Indus.*, 53 S.W.3d at 862; *Codner*, 40 S.W.3d at 671. We hold that the Agreement and the documents to which it refers provide a sufficient description from which to locate the easement with reasonable certainty and overrule issues six and seven.

## IV. Interest, Attorney=s Fees, and Costs

### A. Prejudgment Interest

By issue eight, West Beach argues the Erdeljacs are not entitled to prejudgment interest because prejudgment interest is not available when a judgment is for specific performance.[12] Paragraph 3 of the Agreement provides that A[West Beach] will pay to the [Erdeljacs] the sum of $275,000.@ In awarding the Erdeljacs specific performance, the district-court judgment orders, *inter alia*, that A[West Beach] shall pay to [the Erdeljacs] the sum of $275,000.00 in cash@ and that A[the Erdeljacs] shall recover the additional sum of $12,375.00 in pre-judgment interest and shall have judgment against [West Beach] for such sum.@[13] Neither the parties nor this Court is aware of a case specifically granting or denying prejudgment interest on monetary damages awarded as a part of the specific performance of a contract.

However, the supreme court has recognized that prejudgment interest is Arecoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment.@ *Republic Nat=l Bank v. Northwest Nat=l Bank*, 578 S.W.2d 109, 116 (Tex.

---

[12] The Erdeljacs pleaded both specific performance of the Agreement, including payment of $275,000, and damages for breach of the Agreement at a minimum of $275,000. They also pleaded for prejudgment interest. At trial, the Erdeljacs elected judgment on specific performance.

[13] West Beach does not challenge the calculation or amount of the prejudgment interest.

1979). Here, the Agreement obligated West Beach to pay the Erdeljacs $275,000 by July 13, 2000. The purpose of prejudgment interest is twofold: "(1) encouraging settlements and (2) expediting both settlements and trials by removing incentives for defendants to delay without creating such incentives for plaintiffs." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 529 (Tex. 1998) (citing *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex. 1988); *Cavnar v. Quality Control Parking*, 696 S.W.2d 549, 554-55 (Tex. 1985)). Entitlement to prejudgment interest arises from two sources: general principles of equity or an enabling statute. *Id.* at 528 (citing *Cavnar*, 696 S.W.2d at 552; *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 483-85 (Tex. 1978)). The Erdeljacs argue that their prejudgment-interest award springs from "general principles of equity."[14]

---

[14] We assume without deciding that the appropriate basis for considering prejudgment interest in this case is equity. However, we observe that there may be a statutory basis for the district court=s interest award. Prejudgment interest is generally available when a contract has been breached, if the damages can be ascertained by reference to the contract. *See generally* Tex. Fin. Code Ann. ' 302.002 (West 1998); *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex. 1988); *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930-31 (Tex. 1988). Here, the Agreement provided that West Beach was to pay the Erdeljacs $275,000. The only monetary damages for West Beach=s breach of the Agreement requested by the Erdeljacs= last live pleadings—their sixth amended original petition and second supplemental petition—was $275,000, damages easily ascertainable from the Agreement.

The award of prejudgment interest in this case furthers the supreme court=s announced goal of encouraging and expediting settlements. *See id.* at 529. Following a full-day mediation, the parties reached an agreement that the jury found both intended to be bound by, but that West Beach had failed to follow. The result of West Beach=s action was two trials, culminating in a final judgment in favor of the Erdeljacs almost a year after the mediation. We hold that the recovery of prejudgment interest is not, as a matter of law, precluded by a final judgment grounded in specific performance. The award of equitable prejudgment interest is in the sound discretion of the trial court. *See Miga v. Jensen*, 25 S.W.3d 370, 381 (Tex. App.CFort Worth 2000), *rev=d on other grounds*, 46 Tex. Sup. Ct. J. 89, 2002 Tex. LEXIS 179 (Oct. 31, 2002). A trial court abuses its discretion if its decision is Aarbitrary, unreasonable, and without reference to guiding principles.@ *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). Under the facts of this case, we cannot say that the district court abused his discretion in awarding the Erdeljacs prejudgment interest. We overrule issue eight.

### B. Attorney=s Fees

By issue nine, West Beach argues that the district court erred in awarding the Erdeljacs attorney=s fees. It asserts that the Erdeljacs failed to segregate their attorney=s fees and prove presentment of their claim.

#### 1. Segregation

Attorney=s fees are available when a statute or contract permits such an award. *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996); *Grace v. Duke*, 54 S.W.3d 338, 343 (Tex. App.C Austin 2001, pet. denied). The party seeking attorney=s fees has a duty to segregate the fees incurred in prosecuting a claim for which attorney=s fees may be recovered from those in which they may not. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). A trial court may refuse to award attorney=s fees in the absence of segregation. *See Southern Concrete Co. v. Metrotec Fin., Inc.*, 775 S.W.2d 446, 450 (Tex. App.C Dallas 1989, no writ). ABut when the claims>are dependent upon the same set of facts or circumstances and thus are Aintertwined to the point of being inseparable,@ the party suing for attorney=s fees may recover the entire amount covering all claims.=@ *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997) (quoting *Sterling*, 822 S.W.2d at 11); *accord Village Mobile Homes, Inc. v. Porter*, 716 S.W.2d 543, 552 (Tex. App.C Austin 1986, writ ref=d n.r.e.).

The Erdeljacs were entitled to attorney=s fees for their declaratory judgment and breach-of-contract claims. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 37.009, 38.001(8) (West 1997). West Beach argues that the Erdeljacs failed to segregate expenses incurred in connection with the claims for fraud, nuisance, and interference with the easement,[15] and in addressing West Beach=s defenses and counterclaims.[16] Here, the issue of attorney=s fees was submitted to the district court by affidavits and

---

[15] The district court directed a verdict against the Erdeljacs on their claims for fraud, nuisance, and interference with the use and enjoyment of the easement.

[16] West Beach=s affirmative defenses and counterclaims included: estoppel, waiver, Statute of Frauds, Statute of Conveyances, adverse possession/extinguishment of easement, merger, materially increased burden, illegally subdivided land, ripeness, and slander of property.

argument. We determine that there was sufficient evidence to find all claims integrally related to those for breach-of-contract and declaratory-judgment.

West Beach asserts that A[a]s a matter of law, these issues are not inextricably intertwined.@ In support of its position, West Beach directs this Court to *Panizo v. Young Men=s Christian Ass=n*, 938 S.W.2d 163 (Tex. App.CHouston [1st Dist.] 1996, no writ) and *Southern Concrete Co.*, 775 S.W.2d at 446. We find these cases unpersuasive. In *Panizo* a divided court of appeals affirmed the trial court=s failure to award attorney=s fees where fraud and breach-of-contract claims were not segregated. 938 S.W.2d at 171. The court held that as fraud required proof of *scienter*, which Awould require additional pretrial discovery and trial preparation,@ Panizo=s fraud and breach-of-contract claims required segregation. *Id.* The dissent, however, believed that Panizo had satisfied his burden of proving that his two claims involved proof of essentially the same facts. *Id.* at 172 (O=Conner, J., dissenting) (citing *Sterling*, 822 S.W.2d at 10; *AmSav Group, Inc. v. American Sav. & Loan Ass=n*, 796 S.W.2d 482, 492 (Tex. App.CHouston [14th Dist.] 1990, writ denied); *Gill Sav. Ass=n v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex. App.CHouston [14th Dist.] 1989), *aff=d in part and modified in part*, 797 S.W.2d 31 (Tex. 1990)). *Southern Concrete* likewise affirmed a trial court=s decision to disallow attorney=s fees in the absence of segregating breach-of-fiduciary-duty and fraud claims from a breach-of-contract claim. *Southern Concrete Co.*, 775 S.W.2d at 451. The *Southern Concrete* court did no more than hold, under the facts contained in the record before it, Athat the trial court did not err as a matter of law in concluding that Southern=s causes of action against Metrotec and Murrell were not so inextricably intertwined as to allow recovery of attorney=s fees on the whole case against them.@ *Id.* These cases fall short of supporting

West Beach=s assertion that the Erdeljacs= non-breach-of-contract claims and defense of West Beach=s counterclaims, *as a matter of law*, could not be so intertwined with their breach-of-contract and declaratory-judgment claims to allow the Erdeljacs to recover attorney=s fees for the whole case. This Court has held that fraud and breach-of-contract claims may be inextricably related. *See Porter*, 716 S.W.2d at 552 (holding that DTPA claim, fraud, and breach-of-contract claims all arose from same facts and thus were inseparable).

The Erdeljacs also alleged the marina was a nuisance and constituted interference with their use and enjoyment of the easement. These claims were inextricably related to the validity and scope of the easement because they required proof of the width and possible uses of the easement by both the dominant and servient estates.

At the district-court hearing regarding attorney=s fees, most of the argument centered on whether the Erdeljacs= several attorneys were guilty of overbilling or duplicate billing. The court reduced the overall attorney=s fees from those originally claimed. The court also questioned the attorneys concerning the intertwining of the various claims and was satisfied that the dominant effort in the case concerned enforcement of the Agreement and the other issues were so intertwined as to not require segregation. We agree with the district court=s conclusion.

Thus, we hold that all of the Erdeljacs= claims depended upon substantially the same proof as that necessary for the Erdeljacs= breach-of-contract and declaratory-judgment claims. In addition, West Beach=s defenses were all inextricably related to the validity and scope of the easement, which was the basis of the declaratory-judgment claims. Because all the claims were integrally related to claims for which

**32**

attorney=s fees were available, the district court did not err in awarding attorney=s fees to the Erdeljacs for the entire suit.

### 2. Presentment

West Beach argues that the Erdeljacs never asked for exactly $275,000 after the amount was allegedly due, and thus presentment was not satisfied. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.002 (West 1997). Section 38.002 requires parties to present their claim to the opposing party, and that the opposing party refuse to pay, before a party is entitled to attorney=s fees. *Id.* Presentment does not require a party to follow a particular form C it may be informal or even oral. *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1983); *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App. C Austin 1995, writ denied). A claimant is not required to make a demand of the exact amount it is entitled to recover. *Panizo*, 938 S.W.2d at 169 (citing *Adams v. Petrade Int=l, Inc.*, 754 S.W.2d 696, 720 (Tex. App. C Houston [1st Dist.] 1988, writ denied)); *see also Robinson*, 894 S.W.2d at 529 (interpreting statute requiring Awritten notice of claim@ before prejudgment interest may accrue). The purpose of presentment is to allow the opposing party to pay a claim within 30 days, before becoming liable for attorney=s fees. *Jones*, 614 S.W.2d at 100. Section 38.002 is to be construed liberally to promote its underlying purpose. Tex. Civ. Prac. & Rem. Code Ann. ' 38.005 (West 1997).

We are satisfied that the Erdeljacs adequately presented their claim to West Beach. When it became clear that West Beach was repudiating the Agreement, the Erdeljacs sent a letter demanding full performance of the Agreement, including payment of $275,000. At a subsequent court-ordered mediation, the Erdeljacs again demanded payment, though the requests were for more than $275,000. On September

**33**

28, the Erdeljacs sent another settlement offer to West Beach containing essentially identical terms to those in the Agreement, including demand for payment of $367,468.70. We hold that the Erdeljacs sufficiently notified West Beach that they were demanding performance of the Agreement, including payment of the amount due, and offered West Beach sufficient opportunity to settle the claim without incurring liability for attorney=s fees. We overrule issue nine.

### C.   Court Costs

By issue ten, West Beach argues that the district court abused its discretion in awarding all costs to the Erdeljacs. West Beach urges that as it prevailed in part in the final judgment, specifically on the issue of use of the easement for parking and recreation, it should not be burdened with all costs. The Uniform Declaratory Judgments Act permits the trial court to Aaward *costs* and reasonable and necessary attorney=s fees as are equitable and just.@ Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (West 1997) (emphasis added). Although the civil-practice-and-remedies code allows only the prevailing party in a breach-of-contract suit to recover attorney=s fees and costs, *id.* ' 38.001 (person may recover attorney=s fees in addition to valid claim and costs for contract), the declaratory-judgments act does not limit the award to the prevailing party. *Cf. Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (declaratory-judgments act does not require award of attorney=s fees to prevailing party). West Beach argues that Texas Rule of Civil Procedure 131, combined with the supreme court=s holding in *Furr=s Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375 (Tex. 2002), requires a showing of Agood cause@ and a statement on the record to support such a finding if the prevailing party is not awarded costs. Rule 131 states, AThe successful party to a suit shall recover of his adversary all costs incurred therein, *except where otherwise provided*.@ Tex. R. Civ.

**34**

P. 131 (emphasis added). Because the Uniform Declaratory Judgments Act otherwise provides for recovery of costs in this case, rule 131 does not control. West Beach has not argued that the award of costs in this case was inequitable or unfair. Issue ten is overruled.

## CONCLUSION

The record in this case is lengthy and complex. The parties agreed on very little during the course of the litigation. There were multiple mediations. The pleadings were numerous. The district court conducted two trials, one with a jury, and resolved other contentions by summary judgment. At the end of the process, this Court believes that the district court correctly resolved the conflict and established the basis on which the parties may go forward in quiet enjoyment of their respective properties. We affirm in all things the judgment of the district court.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

Affirmed

Filed: December 5, 2002

Publish