# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00576-CV

**H. Hal McKinney, Appellant**

**v.**

**Willard L. Ferguson, Appellee**

## FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
## NO. 27577, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

H. Hal McKinney sued Willard L. Ferguson to recover money damages for checks written by Ferguson to purchase an oil and gas lease from McKinney. After tendering two separate checks in the amount of $57,500 each to McKinney, Ferguson cancelled payment on the checks. McKinney sued Ferguson, who asserted several affirmative defenses. After a bench trial, the district court entered a take-nothing judgment against McKinney, who appeals in eleven issues, contesting several of the district court's findings of fact and conclusions of law. We will affirm the judgment of the district court.

## BACKGROUND

On Thursday, January 6, 2000, McKinney met with Ferguson regarding Ferguson's interest in investing in or purchasing the Harber/Bille well, which McKinney had drilled on Kenneth

Harber's land in 1988. During this meeting, McKinney represented to Ferguson that (1) McKinney owned the oil and gas lease, the oil well located on the lease, and all of the oilfield equipment located on and associated with the Harber/Bille lease; (2) Harber, the landowner, who had been contentious in the past with McKinney and other neighbors, "was changed," would be a "happy camper," and was satisfied with McKinney and McKinney's operations on the Harber/Bille lease; (3) Harber wanted more wells drilled on the property; and (4) there were no disputes between McKinney and Harber regarding the lease, well, or equipment. Ferguson agreed to purchase the entire lease for $85,000.

McKinney left the meeting and decided that $85,000 was not a sufficient purchase price. He called Ferguson the same day and suggested $125,000 as a more appropriate price. The parties eventually agreed that Ferguson would purchase the lease for $115,000. Later that same day, McKinney returned to Ferguson's office, and Ferguson gave McKinney two checks, each in the amount of $57,500. The first check was dated January 6, 2000, and the second check was dated January 25, 2000.

The next day, Ferguson called the landowner, Harber, to discuss Ferguson's purchase of the lease. Ferguson testified that one of Harber's first statements was: "You know Hal [McKinney] don't own that [oil field] equipment." Harber also told Ferguson that he (Harber) owned the equipment and did not want any more wells drilled on his property. After the conversation with Harber, Ferguson called McKinney multiple times. Unable to reach McKinney, Ferguson left several messages on McKinney's answering machine informing McKinney that

2

Ferguson had spoken to Harber, that Harber claimed he owned the equipment and did not want any more wells drilled, and that "the deal was off."[1]

By Monday morning, January 10, McKinney had still not returned Ferguson's telephone calls, and Ferguson cancelled payment on both checks and returned McKinney's production information.[2] Meanwhile, McKinney traveled to Bryan, Texas, to meet with Harber and Harber's wife. McKinney and the Harbers entered into a handwritten settlement agreement "to settle all present and future disputes (if any exist) . . . regarding Surface Damages, equipment, or any other material associated with the . . . Harber/Bille [oil and gas lease]." In exchange for $1500 and rod string, the Harbers settled all disputes with McKinney and agreed that McKinney then owned the equipment. After meeting with the Harbers, McKinney deposited the first check, but it was later returned to McKinney with a stop-payment notification.

After Ferguson failed to reply to a January 13, 2000 demand letter from McKinney's attorney, McKinney filed suit in district court, seeking "damages from Ferguson which were caused by his breach of contract." Specifically, McKinney sought to recover at least the face value of the two checks issued by Ferguson. Ferguson's answer included seven affirmative defenses. Following a bench trial, the district court entered a take-nothing judgment against McKinney, ordered that Ferguson recover court costs from McKinney, and made numerous findings of fact and conclusions of law. This appeal followed.

---

[1] McKinney testified that he retrieved one message on Sunday night, but that he could not understand the substance of the message because it was garbled.

[2] The production information consisted of maps and other files concerning the well.

## DISCUSSION

McKinney raises eleven issues on appeal. In his first issue, McKinney argues that the district court erred "when it failed to render judgment in McKinney's favor on the checks when McKinney established a prima facie case that he was entitled to recover on the checks and Ferguson failed to plead and prove an affirmative defense." McKinney's next nine issues assert that the district court erred in making various findings of fact and conclusions of law impacting Ferguson's asserted affirmative defenses. Specifically, McKinney challenges the district court's conclusions of law that "[McKinney] failed to perform all conditions precedent as required by the Bill of Sale" and "[McKinney's] suit is barred for failure of consideration." In his final issue, McKinney argues that the district court erred in failing to award McKinney attorney's fees, interest, and court costs, and in awarding court costs to Ferguson.

### Standard of Review

A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In deciding a legal-sufficiency challenge, "we must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). A legal sufficiency or "no evidence" point will be sustained when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital

4

fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1996). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995).

When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). If a party attacks the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). We will set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not reverse merely because we conclude that the evidence preponderates toward a different answer. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

As for the trial court's conclusions of law, they will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Westech Eng'g, Inc.*, 835 S.W.2d at 196. Incorrect conclusions will not require reversal if the controlling findings of fact will

support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

**Suit to Enforce Checks**

On appeal, McKinney asserts that the numerous affirmative defenses asserted by Ferguson—including failure of consideration, failure to comply with the statute of frauds, failure to mitigate, repudiation, recision, and fraudulent inducement—are not applicable because McKinney chose to sue on the checks, not on the underlying contract. *See* Tex. Bus. & Com. Code Ann. § 3.310(b)(3) (West 2002) ("obligee may enforce either the instrument [the check] or the obligation [the contract]").[3] However, McKinney's decision to sue to enforce the checks does not deprive Ferguson of his right to assert defenses. The Texas Business and Commerce Code states:

(a)   Except as provided in Subsection (b),[4] the right to enforce the obligation of a party to pay an instrument is subject to the following:

. . . .

(2)   a defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract[.]

---

[3]   Although Ferguson had stopped payment on the checks, a stop-payment order does not affect the liability of the maker of a check to its holder. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 656 (Tex. 1990).

[4]   Subsection (b) applies only to holders in due course. Tex. Bus. & Com. Code Ann. § 3.305(b) (West 2002). In a conclusion of law, the district court determined that McKinney does not qualify as a holder in due course, and McKinney does not challenge this determination.

*Id.* § 3.305(a)(2) (West 2002); *see also Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 656 & n.7 (Tex. 1990) (if payee not holder in due course, payee takes check subject to all defenses available to maker, including, among others, want or failure of consideration, non-performance of any condition precedent, non-delivery, and delivery for special purpose). We reject McKinney's contention that "the rules governing contracts of sale and purchase are not applicable."

**Failure to Perform Conditions Precedent and Failure of Consideration**

On January 6, 2000, McKinney and Ferguson met at Ferguson's office, and Ferguson agreed to purchase the Harber/Bille lease from McKinney for $85,000. McKinney testified that, after this agreement was reached, he left Ferguson's office after telling Ferguson that he (McKinney) would "go type up the paperwork and get with [Ferguson] after lunch." The district court made the following findings of fact regarding the events that followed:[5]

> J. On Saturday, January 8, 2000, [McKinney] had prepared an Assignment of Oil and Gas Lease for the Harber/Bille Lease and a Bill of Sale for the oil and gas equipment located on the Harber/Bille Lease by Mary Hancock Spitzenberger at Hancock Transcription Service.
>
> K. On Saturday, January 8, 2000, [McKinney] signed the Assignment of the Oil and Gas Lease in the presence of a notary, Mary Hancock Spitzenberger.
>
> * * * *
>
> P. [Ferguson] did not sign either the Assignment of Oil and Gas Lease or the Bill of Sale prepared by [McKinney].

---

[5] McKinney does not challenge these findings of fact.

7

Q.   [McKinney] did not deliver either the Assignment of Oil and Gas Lease or the Bill of Sale to [Ferguson]. Furthermore, the Assignment of Oil and Gas Lease was not filed of record in the county real estate records.

R.   [McKinney] did not file a P-4 Change of Operator Form[6] with the Texas Railroad Commission.

S.   [Ferguson] has not taken possession of the lease or the equipment.

(Exhibit citations omitted.)[7]  In its conclusions of law, the district court determined:

C.   [McKinney] failed to perform all conditions precedent as required by the Bill of Sale.

* * * *

I.   [McKinney's] suit is barred for failure of consideration.

---

**[6]** A P-4 is a regulatory form filed with the Texas Railroad Commission that indicates a well's operator and allows the operator to sell oil from the well. *See IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 894 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

**[7]**  Both the Assignment and Bill of Sale were dated January 8, and the notary's log book includes a handwritten notation that the Assignment was prepared and signed on January 8. Nevertheless, McKinney testified that each notation of January 8 is in error and that these documents were actually prepared and tendered to Ferguson on January 6. However, a demand letter from McKinney's attorney references the agreement to purchase the well entered into "on or about January 8, 2000." Regardless of the factual dispute at trial, McKinney does not contest the district court's finding that both documents were prepared on January 8, 2000.

McKinney argues that the district court erred in concluding that he failed to satisfy all conditions precedent in the Bill of Sale.[8] In support of this issue, McKinney argues in his appellant's brief that "[p]resumably, the reference to failure to perform conditions precedent as required by the Bill of Sale is somehow tied to the trial court's erroneous finding that McKinney did not own the Equipment." Ferguson responds that the failure to perform conditions precedent does not involve the equipment at all;[9] rather, the Bill of Sale required that the first payment would be due upon receipt of the Assignment and Bill of Sale, which were never delivered.

McKinney does not challenge the district court's determination that the Assignment and Bill of Sale were never delivered to Ferguson. However, McKinney responds in his reply brief:

> Absent from [Ferguson's] argument [regarding the failure to deliver the Assignment and Bill of Sale] is an explanation as to how these could have been conditions precedent when the checks had already been delivered. Ferguson's own conduct shows conclusively that any conditions to the delivery of the checks has either been met or had been waived.

We disagree. McKinney's argument ignores the well-established principle that a check can be delivered conditionally. *See, e.g.*, *Losson v. Whitson*, 535 S.W.2d 406, 408 (Tex. Civ. App.—Amarillo 1976, no writ) (where defendant's offer of settlement of account was not accepted, check tendered with offer was subject to defense based on its conditional delivery and was good against any person not holder in due course); *Hunley v. Garber*, 254 S.W.2d 813, 814 (Tex. Civ.

---

[8] The Bill of Sale, prepared by McKinney, states: "BUYER [Ferguson] agrees to purchase said Oil & Gas Lease and associated equipment in two payments, one upon receipt of this Assignment, and Bill of Sale, the other on January 25, 2000."

[9] The true owner of the equipment is irrelevant to our disposition of McKinney's appeal.

App.—Amarillo 1952, no writ) (conditional delivery of promissory note is valid defense); *Bynum v. Peoples State Bank of Turkey*, 243 S.W.2d 190, 191 (Tex. Civ. App.—Amarillo 1951, no writ) (same). Additionally, the Texas Business and Commerce Code provides: "If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed." Tex. Bus. & Com. Code Ann. § 3.303(b) (West 2002).

Here, according to his own testimony, McKinney left Ferguson's office on the morning of January 6 stating that he would "go type up the paperwork and get with [Ferguson] after lunch." McKinney and Ferguson each testified that Ferguson's checks were issued in exchange for both the oil and gas lease and the associated equipment on Harber's land. The Bill of Sale subsequently memorialized this agreement by stating that the first payment from Ferguson was due "upon receipt of this Assignment, and Bill of Sale." Although McKinney argued at trial that he actually delivered the Assignment and Bill of Sale to Ferguson on January 6, the district court determined in findings of fact—unchallenged by McKinney on appeal—that (1) the Assignment and Bill of Sale were prepared on January 8, 2000; (2) neither document was delivered to Ferguson; (3) the Assignment was not filed of record in the county real estate records; (4) McKinney did not file a P-4 Change of Operator Form with the Texas Railroad Commission; and (5) Ferguson did not take possession of the lease or the equipment. These unchallenged findings constitute legally and factually sufficient evidence that McKinney failed to perform all conditions precedent as specified in the Bill of Sale. Additionally, failure to deliver the Assignment and Bill of Sale also constituted

10

a failure of the consideration supporting the parties' agreement.[10] Ferguson tendered the checks to McKinney in exchange for the oil and gas lease and the associated equipment, but McKinney never delivered the Assignment and Bill of Sale indicating the completion of the bargained-for exchange. Because the consideration supporting the agreement failed, McKinney's suit is barred for failure of consideration. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997) ("A contract that lacks consideration, lacks mutuality of obligation and is unenforceable."); *Wilson Supply Co. v. West Artesia Transmission Co.*, 511 S.W.2d 261, 262 (Tex. 1974) (per curiam) (take-nothing judgment in suit on note affirmed due to failure of consideration); *Taylor & Co. v. Nehi Bottling Co.*,

---

[10] The Restatement (Second) of Contracts provides:

§ 71 Requirement of Exchange; Types of Exchange

(1) To constitute consideration, a performance or a return promise must be bargained for.

(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the creation, modification, or destruction of a legal relation.

(4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

Restatement (Second) of Contracts § 79 (1981).

11

30 S.W.2d 494, 495 (Tex. Civ. App.—Dallas 1930, writ dism'd w.o.j.) (same); *see also* Tex. Bus. & Com. Code Ann. § 3.303(b). We therefore overrule McKinney's third and sixth issues regarding conditions precedent and consideration. Because Ferguson established these affirmative defenses, we overrule McKinney's first issue regarding the district court's failure to enter judgment in his favor.

**Attorney's Fees, Interest, and Court Costs**

In his final issue, McKinney argues that the district court erred in failing to award him attorney's fees, interest, and court costs and in awarding $335.00 in court costs to Ferguson. A prevailing party may recover reasonable attorney's fees and costs in addition to the amount of an underlying contract claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 270 (Tex. App.—Austin 2002, no pet.). Because McKinney is not a prevailing party in his contract claim, he is not entitled to an award of attorney's fees. *See Erdeljac*, 94 S.W.3d at 270. Additionally, because Ferguson was the prevailing party, the district court did not err in awarding costs to Ferguson. We therefore overrule McKinney's final issue.

## CONCLUSION

The district court determined that McKinney did not deliver the Assignment or Bill of Sale to Ferguson. As such, the district court did not err in concluding that McKinney failed to perform all conditions precedent in the Bill of Sale. Additionally, the district court did not err in concluding that McKinney's suit is barred for failure of consideration. Finally, because Ferguson,

12

not McKinney, was the prevailing party, the district court did not err in awarding court costs to Ferguson and in denying attorney's fees, interest, and court costs to McKinney. The judgment of the district court is affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:  June 24, 2004