TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00576-CV






H. Hal McKinney, Appellant


v.


Willard L. Ferguson, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT

NO. 27577, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 H. Hal McKinney sued Willard L. Ferguson to recover money damages for checks
written by Ferguson to purchase an oil and gas lease from McKinney. After tendering two separate
checks in the amount of $57,500 each to McKinney, Ferguson cancelled payment on the checks. 
McKinney sued Ferguson, who asserted several affirmative defenses. After a bench trial, the district
court entered a take-nothing judgment against McKinney, who appeals in eleven issues, contesting
several of the district court's findings of fact and conclusions of law. We will affirm the judgment
of the district court.


BACKGROUND

 On Thursday, January 6, 2000, McKinney met with Ferguson regarding Ferguson's
interest in investing in or purchasing the Harber/Bille well, which McKinney had drilled on Kenneth
Harber's land in 1988. During this meeting, McKinney represented to Ferguson that (1) McKinney
owned the oil and gas lease, the oil well located on the lease, and all of the oilfield equipment located
on and associated with the Harber/Bille lease; (2) Harber, the landowner, who had been contentious
in the past with McKinney and other neighbors, "was changed," would be a "happy camper," and
was satisfied with McKinney and McKinney's operations on the Harber/Bille lease; (3) Harber
wanted more wells drilled on the property; and (4) there were no disputes between McKinney and
Harber regarding the lease, well, or equipment. Ferguson agreed to purchase the entire lease for
$85,000.

 McKinney left the meeting and decided that $85,000 was not a sufficient purchase
price. He called Ferguson the same day and suggested $125,000 as a more appropriate price. The
parties eventually agreed that Ferguson would purchase the lease for $115,000. Later that same day,
McKinney returned to Ferguson's office, and Ferguson gave McKinney two checks, each in the
amount of $57,500. The first check was dated January 6, 2000, and the second check was dated
January 25, 2000.

 The next day, Ferguson called the landowner, Harber, to discuss Ferguson's purchase
of the lease. Ferguson testified that one of Harber's first statements was: "You know Hal
[McKinney] don't own that [oil field] equipment." Harber also told Ferguson that he (Harber)
owned the equipment and did not want any more wells drilled on his property. After the
conversation with Harber, Ferguson called McKinney multiple times. Unable to reach McKinney,
Ferguson left several messages on McKinney's answering machine informing McKinney that
Ferguson had spoken to Harber, that Harber claimed he owned the equipment and did not want any
more wells drilled, and that "the deal was off." (1)

 By Monday morning, January 10, McKinney had still not returned Ferguson's
telephone calls, and Ferguson cancelled payment on both checks and returned McKinney's
production information. (2) Meanwhile, McKinney traveled to Bryan, Texas, to meet with Harber and
Harber's wife. McKinney and the Harbers entered into a handwritten settlement agreement "to settle
all present and future disputes (if any exist) . . . regarding Surface Damages, equipment, or any other
material associated with the . . . Harber/Bille [oil and gas lease]." In exchange for $1500 and rod
string, the Harbers settled all disputes with McKinney and agreed that McKinney then owned the
equipment. After meeting with the Harbers, McKinney deposited the first check, but it was later
returned to McKinney with a stop-payment notification.

 After Ferguson failed to reply to a January 13, 2000 demand letter from McKinney's
attorney, McKinney filed suit in district court, seeking "damages from Ferguson which were caused
by his breach of contract." Specifically, McKinney sought to recover at least the face value of the
two checks issued by Ferguson. Ferguson's answer included seven affirmative defenses. Following
a bench trial, the district court entered a take-nothing judgment against McKinney, ordered that
Ferguson recover court costs from McKinney, and made numerous findings of fact and conclusions
of law. This appeal followed.


DISCUSSION

 McKinney raises eleven issues on appeal. In his first issue, McKinney argues that
the district court erred "when it failed to render judgment in McKinney's favor on the checks when
McKinney established a prima facie case that he was entitled to recover on the checks and Ferguson
failed to plead and prove an affirmative defense." McKinney's next nine issues assert that the
district court erred in making various findings of fact and conclusions of law impacting Ferguson's
asserted affirmative defenses. Specifically, McKinney challenges the district court's conclusions of
law that "[McKinney] failed to perform all conditions precedent as required by the Bill of Sale" and
"[McKinney's] suit is barred for failure of consideration." In his final issue, McKinney argues that
the district court erred in failing to award McKinney attorney's fees, interest, and court costs, and
in awarding court costs to Ferguson.


Standard of Review

 A trial court's findings of fact are reviewable for legal and factual sufficiency of the
evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. 
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In deciding a legal-sufficiency challenge,
"we must view the evidence in a light that tends to support the finding of the disputed fact and
disregard all evidence and inferences to the contrary." Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.
2001). A legal sufficiency or "no evidence" point will be sustained when (a) there is a complete
absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital
fact. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1996). More than a scintilla
of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." Id. (quoting Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 25 (Tex. 1994)). If the evidence is so weak as to do no more than create a mere surmise
or suspicion of its existence, its legal effect is that it is no evidence. Haynes & Boone v. Bowser
Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex. 1995).

 When reviewing a challenge to the factual sufficiency of the evidence, we must
consider, weigh, and examine all of the evidence in the record. Plas-Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 445 (Tex. 1989). If a party attacks the factual sufficiency of an adverse finding on
an issue on which the other party had the burden of proof, the attacking party must demonstrate that
there is insufficient evidence to support the adverse finding. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). We will set aside the
verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and
manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We may not reverse merely
because we conclude that the evidence preponderates toward a different answer. See Herbert v.
Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

 As for the trial court's conclusions of law, they will be upheld on appeal if the
judgment can be sustained on any legal theory supported by the evidence. Westech Eng'g, Inc., 835
S.W.2d at 196. Incorrect conclusions will not require reversal if the controlling findings of fact will
support a correct legal theory. Id. Moreover, conclusions of law may not be reversed unless they
are erroneous as a matter of law. Id.


Suit to Enforce Checks

 On appeal, McKinney asserts that the numerous affirmative defenses asserted by
Ferguson--including failure of consideration, failure to comply with the statute of frauds, failure to
mitigate, repudiation, recision, and fraudulent inducement--are not applicable because McKinney
chose to sue on the checks, not on the underlying contract. See Tex. Bus. & Com. Code Ann.
§ 3.310(b)(3) (West 2002) ("obligee may enforce either the instrument [the check] or the obligation
[the contract]"). (3) However, McKinney's decision to sue to enforce the checks does not deprive
Ferguson of his right to assert defenses. The Texas Business and Commerce Code states:



(a) Except as provided in Subsection (b),[ (4)] the right to enforce the obligation of a
party to pay an instrument is subject to the following:


. . . .


 (2) a defense of the obligor stated in another section of this chapter or a defense
of the obligor that would be available if the person entitled to enforce the
instrument were enforcing a right to payment under a simple contract[.]



Id. § 3.305(a)(2) (West 2002); see also Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793
S.W.2d 652, 656 & n.7 (Tex. 1990) (if payee not holder in due course, payee takes check subject to
all defenses available to maker, including, among others, want or failure of consideration,
non-performance of any condition precedent, non-delivery, and delivery for special purpose). We
reject McKinney's contention that "the rules governing contracts of sale and purchase are not
applicable."


Failure to Perform Conditions Precedent and Failure of Consideration

 On January 6, 2000, McKinney and Ferguson met at Ferguson's office, and Ferguson
agreed to purchase the Harber/Bille lease from McKinney for $85,000. McKinney testified that, after
this agreement was reached, he left Ferguson's office after telling Ferguson that he (McKinney)
would "go type up the paperwork and get with [Ferguson] after lunch." The district court made the
following findings of fact regarding the events that followed: (5)


J. On Saturday, January 8, 2000, [McKinney] had prepared an Assignment of Oil
and Gas Lease for the Harber/Bille Lease and a Bill of Sale for the oil and gas
equipment located on the Harber/Bille Lease by Mary Hancock Spitzenberger
at Hancock Transcription Service.



 On Saturday, January 8, 2000, [McKinney] signed the Assignment of the Oil
and Gas Lease in the presence of a notary, Mary Hancock Spitzenberger.



* * * *



 [Ferguson] did not sign either the Assignment of Oil and Gas Lease or the Bill
of Sale prepared by [McKinney].




 [McKinney] did not deliver either the Assignment of Oil and Gas Lease or the
Bill of Sale to [Ferguson]. Furthermore, the Assignment of Oil and Gas Lease
was not filed of record in the county real estate records.

 [McKinney] did not file a P-4 Change of Operator Form[ (6)] with the Texas
Railroad Commission.

 [Ferguson] has not taken possession of the lease or the equipment.




(Exhibit citations omitted.) (7) In its conclusions of law, the district court determined:



 [McKinney] failed to perform all conditions precedent as required by the Bill of
Sale.



* * * *



 [McKinney's] suit is barred for failure of consideration.




 McKinney argues that the district court erred in concluding that he failed to satisfy
all conditions precedent in the Bill of Sale. (8) In support of this issue, McKinney argues in his
appellant's brief that "[p]resumably, the reference to failure to perform conditions precedent as
required by the Bill of Sale is somehow tied to the trial court's erroneous finding that McKinney did
not own the Equipment." Ferguson responds that the failure to perform conditions precedent does
not involve the equipment at all; (9) rather, the Bill of Sale required that the first payment would be due
upon receipt of the Assignment and Bill of Sale, which were never delivered.

 McKinney does not challenge the district court's determination that the Assignment
and Bill of Sale were never delivered to Ferguson. However, McKinney responds in his reply brief: 


Absent from [Ferguson's] argument [regarding the failure to deliver the Assignment
and Bill of Sale] is an explanation as to how these could have been conditions
precedent when the checks had already been delivered. Ferguson's own conduct
shows conclusively that any conditions to the delivery of the checks has either been
met or had been waived.



 We disagree. McKinney's argument ignores the well-established principle that a
check can be delivered conditionally. See, e.g., Losson v. Whitson, 535 S.W.2d 406, 408 (Tex. Civ.
App.--Amarillo 1976, no writ) (where defendant's offer of settlement of account was not accepted,
check tendered with offer was subject to defense based on its conditional delivery and was good
against any person not holder in due course); Hunley v. Garber, 254 S.W.2d 813, 814 (Tex. Civ.
App.--Amarillo 1952, no writ) (conditional delivery of promissory note is valid defense); Bynum
v. Peoples State Bank of Turkey, 243 S.W.2d 190, 191 (Tex. Civ. App.--Amarillo 1951, no writ)
(same). Additionally, the Texas Business and Commerce Code provides: "If an instrument is issued
for a promise of performance, the issuer has a defense to the extent performance of the promise is
due and the promise has not been performed." Tex. Bus. & Com. Code Ann. § 3.303(b) (West
2002).

 Here, according to his own testimony, McKinney left Ferguson's office on the
morning of January 6 stating that he would "go type up the paperwork and get with [Ferguson] after
lunch." McKinney and Ferguson each testified that Ferguson's checks were issued in exchange for
both the oil and gas lease and the associated equipment on Harber's land. The Bill of Sale
subsequently memorialized this agreement by stating that the first payment from Ferguson was due
"upon receipt of this Assignment, and Bill of Sale." Although McKinney argued at trial that he
actually delivered the Assignment and Bill of Sale to Ferguson on January 6, the district court
determined in findings of fact--unchallenged by McKinney on appeal--that (1) the Assignment and
Bill of Sale were prepared on January 8, 2000; (2) neither document was delivered to Ferguson; (3)
the Assignment was not filed of record in the county real estate records; (4) McKinney did not file
a P-4 Change of Operator Form with the Texas Railroad Commission; and (5) Ferguson did not take
possession of the lease or the equipment. These unchallenged findings constitute legally and
factually sufficient evidence that McKinney failed to perform all conditions precedent as specified
in the Bill of Sale. Additionally, failure to deliver the Assignment and Bill of Sale also constituted
a failure of the consideration supporting the parties' agreement. (10) Ferguson tendered the checks to
McKinney in exchange for the oil and gas lease and the associated equipment, but McKinney never
delivered the Assignment and Bill of Sale indicating the completion of the bargained-for exchange. 
Because the consideration supporting the agreement failed, McKinney's suit is barred for failure of
consideration. See Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 409 (Tex. 1997) ("A contract
that lacks consideration, lacks mutuality of obligation and is unenforceable."); Wilson Supply Co.
v. West Artesia Transmission Co., 511 S.W.2d 261, 262 (Tex. 1974) (per curiam) (take-nothing
judgment in suit on note affirmed due to failure of consideration); Taylor & Co. v. Nehi Bottling Co.,
30 S.W.2d 494, 495 (Tex. Civ. App.--Dallas 1930, writ dism'd w.o.j.) (same); see also Tex. Bus.
& Com. Code Ann. § 3.303(b). We therefore overrule McKinney's third and sixth issues regarding
conditions precedent and consideration. Because Ferguson established these affirmative defenses,
we overrule McKinney's first issue regarding the district court's failure to enter judgment in his
favor.


Attorney's Fees, Interest, and Court Costs

 In his final issue, McKinney argues that the district court erred in failing to award him
attorney's fees, interest, and court costs and in awarding $335.00 in court costs to Ferguson. A
prevailing party may recover reasonable attorney's fees and costs in addition to the amount of an
underlying contract claim. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997); West
Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 270 (Tex. App.--Austin 2002, no pet.). Because
McKinney is not a prevailing party in his contract claim, he is not entitled to an award of attorney's
fees. See Erdeljac, 94 S.W.3d at 270. Additionally, because Ferguson was the prevailing party, the
district court did not err in awarding costs to Ferguson. We therefore overrule McKinney's final
issue.


CONCLUSION

 The district court determined that McKinney did not deliver the Assignment or Bill
of Sale to Ferguson. As such, the district court did not err in concluding that McKinney failed to
perform all conditions precedent in the Bill of Sale. Additionally, the district court did not err in
concluding that McKinney's suit is barred for failure of consideration. Finally, because Ferguson,
not McKinney, was the prevailing party, the district court did not err in awarding court costs to
Ferguson and in denying attorney's fees, interest, and court costs to McKinney. The judgment of
the district court is affirmed.



 __________________________________________ Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: June 24, 2004
1. McKinney testified that he retrieved one message on Sunday night, but that he could not
understand the substance of the message because it was garbled.
2. The production information consisted of maps and other files concerning the well.
3. Although Ferguson had stopped payment on the checks, a stop-payment order does not
affect the liability of the maker of a check to its holder. Guaranty Fed. Sav. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 656 (Tex. 1990).
4. Subsection (b) applies only to holders in due course. Tex. Bus. & Com. Code Ann.
§ 3.305(b) (West 2002). In a conclusion of law, the district court determined that McKinney does
not qualify as a holder in due course, and McKinney does not challenge this determination.
5. McKinney does not challenge these findings of fact.
6. A P-4 is a regulatory form filed with the Texas Railroad Commission that indicates a well's
operator and allows the operator to sell oil from the well. See IP Petroleum Co. v. Wevanco Energy,
L.L.C., 116 S.W.3d 888, 894 (Tex. App.--Houston [1st Dist.] 2003, pet. denied).
7. Both the Assignment and Bill of Sale were dated January 8, and the notary's log book
includes a handwritten notation that the Assignment was prepared and signed on January 8. 
Nevertheless, McKinney testified that each notation of January 8 is in error and that these documents
were actually prepared and tendered to Ferguson on January 6. However, a demand letter from
McKinney's attorney references the agreement to purchase the well entered into "on or about January
8, 2000." Regardless of the factual dispute at trial, McKinney does not contest the district court's
finding that both documents were prepared on January 8, 2000.
8. The Bill of Sale, prepared by McKinney, states: "BUYER [Ferguson] agrees to purchase
said Oil & Gas Lease and associated equipment in two payments, one upon receipt of this
Assignment, and Bill of Sale, the other on January 25, 2000."
9. The true owner of the equipment is irrelevant to our disposition of McKinney's appeal.
10. The Restatement (Second) of Contracts provides:


§ 71 Requirement of Exchange; Types of Exchange



 To constitute consideration, a performance or a return promise must be
bargained for.

 A performance or return promise is bargained for if it is sought by the
promisor in exchange for his promise and is given by the promisee in
exchange for that promise.

 The performance may consist of

 
 an act other than a promise, or

 a forbearance, or

 the creation, modification, or destruction of a legal relation.

 
 The performance or return promise may be given to the promisor or to
some other person. It may be given by the promisee or by some other
person.



Restatement (Second) of Contracts § 79 (1981).